IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-803-D

| | | |
|---|---|---|
| ERIC C. BROADWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

On August 15, 2016, Eric C. Broadway ("Broadway" or "plaintiff") filed a pro se Title VII religious discrimination claim against United Parcel Service, Inc. ("UPS" or "defendant") in Wake County Superior Court [D.E. 1-1]. On September 16, 2016, UPS removed the action to this court [D.E. 1]. On August 30, 2017, UPS moved for summary judgment [D.E. 15] and filed a memorandum in support [D.E. 16]. On October 4, 2017, Broadway responded in opposition [D.E. 20]. On October 18, 2017, UPS replied [D.E. 21].[1] As explained below, the court grants UPS's motion for summary judgment.

I.

In May 2013, Broadway began working for UPS as a part-time loader. See Pl.'s Dep. 60, 64 [D.E. 16-3]; Grant Decl. ¶ 25 [D.E. 16-1]. In the fall of 2013, Broadway applied to be a cover driver. See Pl.'s Dep. at 64, 67–68; Grant Decl. ¶ 25. Cover drivers are part-time employees who "cover" for full-time package car drivers when they are absent or when UPS experiences an unusually high workload. See Pl.'s Dep. at 64–65; Grant Decl. ¶ 25. In October 2013, before starting as a cover

---

[1] The court sustains UPS's objection to Broadway's sur-reply [D.E. 23].

driver, Broadway requested an exception to the UPS Appearance Standards Code. See Coates Decl. ¶ 7 [D.E. 16-2]; Pl.'s Dep. at 120. Broadway is a Rastifarian and wears his hair in dread locks. On October 24, 2013, Broadway completed a religious accommodations request. See Pl.'s Dep. at 99; Coates Decl. ¶ 8. On November 22, 2013, UPS granted Broadway's accommodation request concerning the UPS appearance standards. See Pl.'s Dep. at 121; Coates Decl. ¶ 8.

In the summer of 2014, UPS assigned Broadway to work as a regular temporary driver at UPS's Raleigh Metro Center, and Broadway reported to supervisor Frederick Fuller ("Fuller"). See Fuller Decl. ¶¶ 7–8 [D.E. 16-7]. On June 16, 2015, Fuller conducted scan-check audits on approximately fourteen drivers, including Broadway. See id. ¶ 18. The scan-check audit showed discrepancies in Broadway's package deliveries. See id. ¶¶ 18–20; Grant Decl. ¶¶ 26–27. Specifically, the scan-check audit showed that Broadway had service failures, with eight packages recorded as "not found." See Fuller Decl. ¶ 18. UPS uses a "not found" code when there has been a "misload" (i.e., the package was supposed to be on the driver's package car, but was not actually loaded due to an error in the preloading process). See Grant Decl. ¶ 23. In addition, the daily discrepancy report for June 16, 2015, showed that Broadway had recorded 21 packages (8 from the scan-check audit and 13 others) as "not found" and therefore not delivered on June 16, 2015. See Fuller Decl. ¶ 19; Grant Decl. Exs. 3 & 4. Pursuant to UPS policy, Fuller investigated these service failures. See Fuller Decl. ¶ 20.

Fuller concluded that recording "not found" for the eight scan-check audited packages was unusual because the packages had physically been loaded on Broadway's package car before Broadway's departure for the day. See id. ¶ 19. Fuller asked Package Dispatch Supervisor, Timothy Sill, to examine Broadway's package car to see if any packages were still on the car. See id. ¶ 20; Sill Decl. ¶ 4 [D.E. 16-8]. Sill not only found the eight packages that appeared in the scan-check

2

audit report, but also twelve other packages that Broadway recorded as "not found" and had not delivered. See Fuller Decl. ¶ 20; Sill Decl. ¶¶ 4–5. Fuller concluded that Broadway had improperly recorded the 20 packages as "not found." See Fuller Decl. ¶ 21.

On June 17, 2015, Fuller met with Broadway and Broadway's union steward to discuss Broadway's service failures. See id. ¶ 22; Pl.'s Dep. at 165. Broadway attempted to explain why he recorded so many packages as "not found," even though the packages were on Broadway's package car. See Fuller Decl. ¶¶ 22–23; Pl.'s Dep. at 168–69. Fuller did not find Broadway's explanation credible given that four of the packages were so large that Broadway would have had to walk around the packages to access other packages that Broadway delivered on June 16, 2015. See Fuller Decl. ¶ 23. Moreover, during the meeting, Broadway never acknowledged the full scope of recording so many packages as "not found." See id. ¶ 24.

Because 20 packages were still on Broadway's package car when Broadway returned to Metro Center and because Broadway recorded those packages as "not found," Fuller concluded that Broadway failed to deliver the packages and falsely claimed that the packages were "not found." See id. ¶¶ 27–28. Fuller then decided to begin the process under the collective bargaining agreement to terminate Broadway's employment for violating UPS's procedure concerning package delivery and violating UPS's honesty in employment policy by creating inaccurate records about packages that UPS entrusted to him. See id. ¶ 29. Before beginning the discharge process, Fuller reviewed the circumstances with the UPS labor department to ensure there was "good cause" for the discharge. See id.; Grant Decl. ¶ 26.

On July 1, 2015, UPS and the union held a local hearing concerning Broadway. See Fuller Decl. ¶ 30; Grant Decl. ¶ 27. At the local hearing, Broadway admitted that he wrongly recorded four packages, but was not forthcoming about the scope of his misconduct. See Pl.'s Dep. at 182; Fuller

3

Decl. ¶¶ 30–31; Grant Decl. ¶ 27. After the local hearing and pursuant to the collective bargaining agreement, the union scheduled an AAPGC panel hearing for the week of August 22, 2015, in Baltimore, Maryland. See Grant Decl. ¶ 28. Broadway did not attend the AAPGC panel hearing. See id.; Pl.'s Dep. at 183. Instead, before the hearing, the union business agent told the UPS labor manager that Broadway would resign if UPS converted his termination for dishonesty into a resignation for personal reasons. See Pl.'s Dep. at 183–85; Grant Decl. ¶ 28. In accordance with Broadway's request, UPS agreed to convert his termination into a resignation. See Pl.'s Dep. at 183–85; Grant Decl. ¶ 28. The union representative then told the panel that the case had been settled/withdrawn. See Pl.'s Dep. at 183–85; Grant Decl. ¶ 28.

On September 9, 2015, Broadway filed an EEOC charge alleging religious discrimination. Pl.'s Dep. at 210; (Ex. 24) [D.E. 16-6] 12. Specifically, Broadway alleged that UPS terminated his employment because of his Rastifarian religion. See Ex. 24. On May 10, 2016, the EEOC dismissed Broadway's EEOC charge. Pl.'s Dep. 211–12; (Ex. 25) [D.E. 16-6] 13.

II.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the non-movant and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 324–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially demonstrate an absence of a genuine issue of material fact or the absence of evidence to support the nonmoving

party's case. Celotex Corp., 477 U.S. at 325. Once the movant meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments or a "scintilla of evidence" will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). "[T]here must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252. In evaluating material submitted in support of or in opposition to a motion for summary judgment, the court may reject inadmissible evidence (such as hearsay). See Fed. R. Civ. P. 56(c)(4); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

Title VII prohibits an employer from terminating an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish such a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. See, e.g., Diamond v. Colonial Life & Accident Ins., 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may proceed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See generally Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004) (en banc), abrogated in part on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013).

Direct evidence is evidence from which no inference is required. To show religious discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. See id. at 286–91. Such direct evidence would include a decisionmaker's statement that the decisionmaker terminated the

5

plaintiff due to his religion. See id. at 303. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151–52 (2000); see Holley v. N.C. Dep't of Admin., 846 F. Supp. 2d 416, 427 (E.D.N.C. 2012).

Even without direct evidence of religious discrimination, a plaintiff's Title VII claim can survive summary judgment if the plaintiff raises a genuine issue of material fact under the burden-shifting framework established in McDonnell Douglas. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason." Burdine, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." Hill, 354 F.3d at 285 (quotation omitted); see, e.g., Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 256; King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003).

Broadway contends that UPS terminated his employment due to his religion. Broadway lacks direct evidence of religious discrimination, and instead relies on the McDonnell Douglas framework. Under McDonnell Douglas, Broadway first must establish a prima facie case of religious discrimination by showing that (1) he is a member of a protected class; (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of his discharge; and (4) the discharge arose under circumstances permitting a reasonable inference of religious discrimination. See, e.g., Abeles v. Metro Wash. Airports Auth., 676 F. App'x 170, 174–75 (4th Cir. 2017)

(unpublished); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012). If Broadway succeeds in proving his prima facie case, the burden shifts to UPS to articulate a legitimate, nondiscriminatory reason for Broadway's discharge. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506–07; Burdine, 450 U.S. at 254. If UPS carries this burden of production by articulating a legitimate, nondiscriminatory reason for Broadway's discharge, Broadway must prove that the reason UPS offered for the adverse employment action was a mere pretext for religious discrimination. See, e.g., Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 255–56; Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 514 (4th Cir. 2006); Hill, 354 F.3d at 298; King, 328 F.3d at 150–54; Wileman v. Frank, 979 F.2d 30, 33 (4th Cir. 1992).

A plaintiff can prove pretext by showing that the alleged nondiscriminatory "explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [religious] discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quotation omitted); see Reeves, 530 U.S. at 147. In analyzing the record concerning pretext, the court does not sit to decide whether the employer in fact discriminated against the plaintiff on the basis of religion. See, e.g., Holland v. Washington Homes, Inc., 487 F.3d 208, 217 (4th Cir. 2007); Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279–80 (4th Cir. 2000). Rather, the court focuses on whether the plaintiff has raised a genuine issue of material fact as to pretext under Reeves and its Fourth Circuit progeny. Under Reeves and its Fourth Circuit progeny, a plaintiff may not "simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of [religion]." Laber v. Harvey, 438 F.3d 404, 430–31 (4th Cir. 2006) (en banc). In certain cases, however, the factfinder may infer illegal discrimination from the articulated reason's falsity. See id. at 431; Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000).

7

An employer is entitled to summary judgment on the issue of pretext if the employee "create[s] only a weak issue of fact as to whether the employer's reason [is] untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148. Moreover, a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge. See Dockins v. Benchmark Commc'ns, 176 F.3d 745, 749 (4th Cir. 1999); Iskander v. Dep't of the Navy, 116 F. Supp. 3d 669, 678–79 (E.D.N.C. 2015), aff'd, 625 F. App'x 211 (4th Cir. 2015) (per curiam) (unpublished). Terminating an employee for poor performance is not religious-related, and an employer lawfully can rely on poor performance in taking adverse employment action. See Mereish, 359 F.3d at 335; Hawkins, 203 F.3d at 280; Fisher v. Asheville-Buncombe Tech. Cmty. Coll., 857 F. Supp. 465, 469–70 (W.D.N.C. 1993), aff'd, 25 F.3d 1039 (4th Cir. 1994) (per curiam) (unpublished table decision).

UPS argues that Broadway failed to establish a prima facie case because Broadway was not discharged. Rather, he voluntarily resigned. Alternatively, even if UPS discharged him, UPS argues that Broadway was not fulfilling UPS's legitimate expectations at the time of his discharge. In support, UPS cites evidence detailing Broadway's poor performance and dishonesty. Broadway responds with his own opinion that he was honest and performing his job duties satisfactorily and that UPS really fired him because of his religion.

Even viewing the record in the light most favorable to Broadway, Broadway voluntarily resigned in exchange for UPS converting his termination for dishonesty into a resignation for personal reasons. Absent a constructive discharge (which is not present here), a resignation is not adverse employment action. See, e.g., Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185–88 (4th Cir. 2004). Thus, no reasonable jury could find that Broadway established a prima facie case.

See id. at 188.

Alternatively, in considering whether an employee was meeting his employer's legitimate expectations, "it is the perception of the [employer] which is relevant, not the self-assessment of the plaintiff." Hawkins, 203 F.3d at 280 (alteration and quotation omitted); see King, 328 F.3d at 149; Smith v. Flax, 618 F.2d 1062, 1067 (4th Cir. 1980); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 607 (E.D.N.C. 2006). Thus, an employee's own testimony about his job performance does not create a genuine issue of material fact concerning whether he was meeting his employer's legitimate expectations. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1067; Smith v. Martin, No. 5:10-CV-248-D, 2011 WL 3703255, at *5 (E.D.N.C. Aug. 23, 2011) (unpublished); O'Daniel v. United Hospice, No. 4:09-CV-72-D, 2010 WL 3835024, at *4 (E.D.N.C. Sept. 29, 2010) (unpublished); Lloyd v. New Hanover Reg'l Med. Ctr., No. 7:06-CV-130-D, 2009 WL 890470, at *9 (E.D.N.C. Mar. 31, 2009) (unpublished), aff'd, 405 F. App'x 703 (4th Cir. 2010) (per curiam) (unpublished); McDougal-Wilson, 427 F. Supp. 2d at 611. Even viewing the evidence in the light most favorable to Broadway, Broadway has failed to establish a prima facie case of religious discrimination. Thus, the court grants summary judgment to UPS on Broadway's claim that UPS terminated his employment due to his religion.

Alternatively, even if Broadway established a prima facie case of religious discrimination, his claim fails. UPS has articulated a legitimate, nondiscriminatory reason for discharging Broadway: poor performance and dishonesty. Moreover, Broadway has not offered evidence from which a rational factfinder could find that UPS's proferred reasons were a pretext designed to mask religious discrimination. See Miles v. Dell, Inc., 429 F.3d 480, 488–89 & n.5 (4th Cir. 2005); Hill, 354 F.3d at 285. Indeed, Broadway presents no admissible evidence suggesting that UPS's stated reasons for discharging him were a pretext to mask religious discrimination. Furthermore, UPS

9

consistently has given the same reasons to explain Broadway's discharge: poor performance and dishonesty.

In opposition, Broadway cites his own opinion about his performance and honesty and his subjective opinion that UPS fired him because of his religion. Although Broadway subjectively believes that he was performing well and was honest, an employee's perception of his own performance cannot establish a genuine issue of material fact as to whether the employee was meeting his employer's legitimate expectations. See, e.g., King, 328 F.3d at 149; Hawkins, 203 F.3d at 280; Smith, 618 F.2d at 1067. Although Broadway contests the factual accuracy of the critiques of his performance and honesty, the issue is whether Fuller, the decisionmaker, believed the critiques to be true. See Holland, 487 F.3d at 215–17; Hill, 354 F.3d at 293–94; Hawkins, 203 F.3d at 280. He did. Moreover, this court does not sit as a super-personnel board and ask whether UPS (through Fuller) should have excused Broadway's poor performance and dishonesty or given Broadway another chance. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005); DeJarnette v. Corning Inc., 133 F.3d 293, 298–99 (4th Cir. 1998). Furthermore, Broadway has produced no evidence that UPS took any action against him because of his religion. Thus, the court grants UPS's motion for summary judgment.

III.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 15]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 24 day of January 2018.

JAMES C. DEVER III
Chief United States District Judge

10